812 F.2d 72
 Quentin MEADOWS, Appellant,
v.
Robert H. KUHLMANN, Superintendent, Sullivan Correctional
Facility, Fallsburg, New York, Robert Abrams,
Attorney General of New York, and Denis
Dillon, District Attorney of
Nassau County, Appellees.
 No. 795, Docket 86-2365.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 5, 1987.
Decided Feb. 20, 1987.
 
 Spiros A. Tsimbinos, Kew Gardens, N.Y., for appellant.
 Bruce E. Whitney, Asst. Dist. Atty., Nassau County, Mineola, N.Y. (Denis Dillon, Dist. Atty., and Anthony J. Girese, Asst. Dist. Atty., Mineola, N.Y., on the brief), for appellees.
 Before TIMBERS, PIERCE and ALTIMARI, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Quentin Meadows ("appellant"), a state prisoner, appeals from a judgment entered September 25, 1986 in the Eastern District of New York, Thomas C. Platt, District Judge, denying his petition for a writ of habeas corpus. 644 F.Supp. 757 (E.D.N.Y.1986). The court held that the error, if any, in the admission in evidence of an identification, made during a lineup after the right to counsel had attached but when defense counsel was not present, was harmless. The court also held that, because appellant's Sixth Amendment right to counsel had not attached at the time appellant made certain incriminating statements, such statements were properly admitted for impeachment purposes.
 
 
 2
 On appeal, appellant argues, first, that the admission in evidence of the identification made at the lineup when defense counsel was not present violated his right to counsel and that the error was not harmless beyond a reasonable doubt; and, second, that appellant was improperly impeached by the use of his incriminating statements, since the statements were taken in violation of his right to counsel after the right had attached.
 
 
 3
 We hold that any error in the admission of the lineup identification was harmless beyond a reasonable doubt, in view of the overwhelming evidence of appellant's guilt. We also hold that, although appellant's Sixth Amendment right to counsel had attached at the time he made the incriminating statements and the use of those statements for impeachment purposes was error, such error was harmless beyond a reasonable doubt.
 
 
 4
 We affirm the judgment denying the petition for a writ of habeas corpus, but we do so on grounds other than those set forth in the district court opinion.
 
 I.
 
 5
 We summarize only those facts believed necessary to an understanding of the issues raised on appeal.
 
 
 6
 On the evening of October 21, 1980 three individuals were present at a gas station in Elmont, Long Island. Two of the individuals, John Taylor and Paul Cufalo, were attendants at the station. The third, James Alviti, was Taylor's cousin; he came to visit the attendants at approximately 9:15 P.M. Shortly after Alviti's arrival, appellant entered the gas station, displayed the butt of a gun to Taylor and Alviti, and ordered them into the back room where Cufalo was on the telephone. Forcing the three men to lie, or crouch, on the floor, appellant demanded money from them. Alviti had no money with him. After Taylor and Cufalo gave appellant their money, he fled, after having instructed the three victims to stay in the back room for fifteen minutes.
 
 
 7
 Taylor called the police and reported the robbery. When the police arrived, Taylor and Alviti gave detailed descriptions of the robber. Cufalo was unable to do so.
 
 
 8
 The next day Taylor and Alviti went to police headquarters to view some photographs and slides in an attempt to identify the robber. A slide presentation of individuals who fitted the general description, consisting of approximately sixteen slides, was made. Taylor and Alviti viewed the slide presentation together. When appellant's slide was shown, they simultaneously identified it as portraying the robber. A photographic array, consisting of approximately six photographs, was shown separately to Taylor and Alviti. Each of them again identified appellant and each gave statements to that effect.
 
 
 9
 On October 29, 1980--eight days after the first robbery--Taylor again was at work at the gas station. His co-attendant that evening was Vincent Rizzuto. At approximately 9:15 P.M., while Taylor was at the gasoline pumps servicing a car, Taylor observed appellant enter the gas station. He asked the customer to call the police. The customer declined to do so. Taylor then entered the station where he found appellant holding Rizzuto at gun point. Appellant, addressing Taylor by his first name, ordered Taylor and Rizzuto into the back room where he robbed them. Appellant fled, again having instructed his victims to remain in the back room.
 
 
 10
 Taylor immediately called the police and reported that the same person who had robbed him the week before had robbed him again. Police officers arrived at the gas station soon after Taylor's call. The officers took a description of the robber. Taylor reiterated that it was appellant who again had robbed him. Detective Byron Bartlett arrived with the photographic array assembled by him the week before and showed it to Taylor and Rizzuto separately. Each identified appellant and gave statements to that effect.
 
 
 11
 On November 7, 1980 a felony complaint was filed and an arrest warrant for appellant was obtained from a state court judge. On November 20 appellant was arrested at his home by detectives of the Nassau County Police Department. Appellant was given his Miranda warnings and was taken to the Robbery Squad Room of the Nassau County Police Department. Several hours later, while still in custody, appellant made incriminating statements to Detective Thomas P. Howell in which he confessed to having committed the two robberies.
 
 
 12
 On January 26, 1981 appellant was indicted in the Nassau County Court on two counts of robbery in the first degree and two counts of criminal use of a firearm in the first degree. At his arraignment on March 25, 1981, appellant was represented by retained counsel. The attorney requested a two-month adjournment to prepare for trial and to make appropriate motions. The court granted the adjournment as requested. However, no motions were ever filed, nor did the attorney respond to several attempts by the court to contact him to arrange a pre-trial conference.
 
 
 13
 On February 13, 1981 the state moved by order to show cause for a pre-trial lineup. Defense counsel did not answer the state's motion and made no appearance in response to the order to show cause. On May 19, 1981 the lineup was conducted in the absence of defense counsel, the detective in charge having attempted to contact the attorney unsuccessfully. The only witness who appeared at the lineup was Rizzuto. He immediately identified appellant, selecting him from the five individuals who participated in the lineup.
 
 
 14
 On November 20, 1981 a hearing on identification issues raised by the defense was held before the state court.[1] At the close of the hearing, the court issued its findings of fact and conclusions of law. It found that the photographic arrays and the lineup were not unduly suggestive and that each of the three victims who testified had independent sources for their in-court identifications of appellant, based on their observations during the robberies. The court held, however, and the state conceded, in accordance with People v. Samuels, 49 N.Y.2d 218, 400 N.E.2d 1344, 424 N.Y.S.2d 892 (1980), that the incriminating statements made by appellant to Detective Howell could not be used in the prosecution's case-in-chief because they were made after the right to counsel had attached, and yet counsel was not present when the statements were made. The court further held that the state could use the statements to impeach appellant should he choose to testify because the statements had been made voluntarily within the meaning of Harris v. New York, 401 U.S. 222 (1971). The court also held that appellant was not denied his right to counsel at the lineup because of his counsel's refusal to attend.
 
 
 15
 Appellant's trial commenced January 11, 1982. Taylor, Rizzuto and Alviti all testified regarding the identification proceedings which had been held prior to trial. All three made in-court identifications of appellant. Rizzuto also testified to his prior identification of appellant at the May 19, 1981 lineup. Appellant took the stand in his own defense and testified that he never had been at the gas station involved and that he did not commit the robberies on either occasion. The prosecution then introduced, in accordance with the court's ruling of November 20, 1981, appellant's prior incriminating statements through the rebuttal testimony of Detective Howell. On January 19, 1982 the jury returned a guilty verdict. On March 5, 1982, appellant was sentenced as a second violent felony offender to two concurrent indeterminate terms of ten to twenty years imprisonment. The court ordered the instant sentence to be served consecutively to any other sentence previously imposed.
 
 
 16
 Appellant appealed his judgment of conviction to the Appellate Division, Second Department, which unanimously affirmed without opinion on June 4, 1984. People v. Meadows, 102 A.D.2d 1016, 476 N.Y.S.2d 230 (2d Dept.1984). Leave to appeal was granted. On March 21, 1985 the New York Court of Appeals affirmed, holding that the error, if any, in the introduction of evidence of Rizzuto's lineup identification was harmless. That court also held that appellant's incriminating statements were properly used for impeachment purposes. People v. Meadows, 64 N.Y.2d 956, 477 N.E.2d 1097, 488 N.Y.S.2d 643 (1985). Subsequently, appellant filed a petition for a writ of certiorari with the Supreme Court of the United States. That petition was denied on October 7, 1985. Meadows v. New York, 106 S.Ct. 69 (1985).
 
 
 17
 On December 17, 1985 appellant filed the instant petition for a writ of habeas corpus. The petition was denied by a judgment entered in the district court on September 25, 1986. A certificate of probable cause was issued by the district court on October 20, 1986.
 
 
 18
 For the reasons which follow, we affirm.
 
 II.
 A.
 
 19
 In United States v. Wade, 388 U.S. 218 (1967), the Court held that a post-indictment lineup was a critical stage of a prosecution at which a defendant was entitled to the aid of counsel. The Court stated that "... the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." Id. at 228. In Gilbert v. California, 388 U.S. 263 (1967), a companion case to Wade, the Court enunciated a per se rule that, if a pre-trial lineup occurs in the absence of counsel, that pre-trial identification is inadmissible at trial. "Only a per se exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." Id. at 273.
 
 
 20
 Applying these principles, we hold that the post-indictment lineup in the instant case, held in the absence of defense counsel, was in derogation of appellant's constitutional rights. The admission in evidence of Rizzuto's lineup identification therefore was error. This does not end our inquiry. We must determine next the magnitude of the error.
 
 
 21
 Rizzuto made an in-court identification of appellant as the robber. This in-court identification was admissible, despite the violation of appellant's constitutional rights, provided it had an independent origin, untainted by the lineup illegality. United States v. Wade, supra, 388 U.S. at 239-41. The state courts found that the in-court identification of appellant by Rizzuto was based on observation of the appellant during the robbery itself, rather than at the lineup. This is a factual finding to which we must accord the presumption of correctness expressly required by 28 U.S.C. Sec. 2254(d) (1982). Kuhlmann v. Wilson, 106 S.Ct. 2616, 2630 (1986).
 
 
 22
 Further, in light of the overwhelming evidence of guilt, Rizzuto's additional testimony about his lineup identification was merely surplusage. Taylor, who had been victimized twice by appellant in an eight day period, identified appellant in-court as the robber. Alviti also made an in-court identification. The witnesses each testified that they had observed appellant, unobstructed, at close range for a period of time ranging from two to five minutes during the commission of the respective crimes. Moreover, all three witnesses testified that the lighting conditions allowed them to observe appellant clearly. The three witnesses gave accurate descriptions of the robber immediately following the crimes and were able immediately to identify appellant's picture when confronted with the photographic arrays. The searing personal impact of the crimes undoubtedly left these victims with particularly vivid recollections of the events, including the identity of appellant. Indeed, we have recognized that, when a witness also is the victim of a crime, the reliability of the identification is enhanced. United States ex rel. Phipps v. Follette, 428 F.2d 912, 915-16 (2 Cir.), cert. denied, 400 U.S. 908 (1970). See also Neil v. Biggers, 409 U.S. 188, 200 (1972).
 
 
 23
 For these reasons we are "able to declare a belief that [the admission of the lineup evidence] was harmless beyond a reasonable doubt," Chapman v. California, 386 U.S. 18, 24 (1967).
 
 B.
 
 24
 In the instant case, appellant was arrested following the filing of a felony complaint and the issuance of an arrest warrant by the Nassau County Court. As stated above, the trial court ruled, and the prosecution conceded, that, although the incriminating statements made to Detective Howell were inadmissible in the state's case-in-chief because of a constitutional defect, the statements could be used for impeachment purposes because they were given voluntarily. Appellant argues that this ruling constituted reversible error. We disagree.
 
 
 25
 The Sixth Amendment right to counsel applies only to "critical stages" of a criminal prosecution. The right to counsel attaches once the criminal action has been commenced. There is equal need, however, for the assistance of counsel if substantial rights of an accused may be affected by a particular proceeding or by a statute governing criminal procedure, if that proceeding or statute may be unique to a particular state. Applying that test, the Supreme Court has looked to state law to determine what is a "critical stage", or the commencement of the adversarial process, for purposes of the Sixth Amendment. For example, in Hamilton v. Alabama, 368 U.S. 52 (1961), the Court held that an indigent defendant was entitled to appointed counsel at an arraignment when state law viewed defenses not raised at that point as abandoned. Likewise, in Coleman v. Alabama, 399 U.S. 1 (1970), the Court held that the Sixth Amendment right to counsel applied to a preliminary hearing granted by state law. See also White v. Maryland, 373 U.S. 59 (1963). We also have turned to state criminal procedure law to determine the point at which a criminal action is commenced in New York. In United States ex rel. Robinson v. Zelker, 468 F.2d 159 (2 Cir.1972), cert. denied, 411 U.S. 939 (1973), we held that the filing of a complaint and the issuance of an arrest warrant by a state court judge was the commencement of adversarial proceedings for purposes of the Sixth Amendment, pursuant to former Section 144 of the New York Code of Criminal Procedure.
 
 
 26
 The New York Code of Criminal Procedure was repealed and replaced by the New York Criminal Procedure Law in 1971. "If anything, the new law reflects the legislative choice of an even earlier point in the criminal process to use as the point of commencement of the action." O'Hagan v. Soto, 523 F.Supp. 625, 630 (S.D.N.Y.1981). Pursuant to the current statute a criminal action now commences with the filing of an accusatory instrument, including a felony complaint. N.Y.Crim.Pro.Law Sec. 100.05 (McKinney 1981). The right to counsel therefore attached in the instant case with the filing of the felony complaint. Accord, People v. Samuels, supra, 49 N.Y.2d at 221, 400 N.E.2d at 1346, 424 N.Y.S.2d at 894. The incriminating statements taken by Detective Howell were made in the absence of counsel, in derogation of appellant's constitutional rights. As a result the statements could not be used by the state in its case-in-chief. The state court ruled accordingly. We agree.
 
 
 27
 The state court, however, permitted the prosecution to impeach appellant with incriminating statements taken in the absence of counsel. We are constrained to hold that this decision was constitutionally infirm. In United States v. Brown, 699 F.2d 585 (2 Cir.1983), we held that the government had a "heavy burden" of proving that any inculpatory statements taken in violation of the Sixth Amendment right to counsel were voluntarily given after a valid waiver of that right. We held that, absent a valid waiver, the use of a statement taken in derogation of a defendant's right to counsel was absolutely prohibited, not only in the government's case-in-chief, but as impeachment evidence as well. Id. at 590. In the instant case, there was no waiver of appellant's right to counsel prior to the taking of the incriminating statements. Accordingly, we hold that it was constitutionally erroneous to permit the state to introduce those statements through rebuttal testimony for impeachment purposes.
 
 
 28
 We decline appellant's invitation, however, to hold that this error requires the granting of the habeas writ. In contradistinction to the facts in Brown, it is utterly unreasonable to suggest that the impeachment evidence played a critical role in the jury's decision in the instant case. As we have held above, the evidence of appellant's guilt was overwhelming. Under these circumstances we hold that the error in admitting appellant's incriminating statements taken in the absence of counsel was harmless beyond a reasonable doubt.
 
 III.
 To summarize:
 
 29
 We hold that the error in the admission of the lineup identification was harmless beyond a reasonable doubt.
 
 
 30
 We further hold that, pursuant to New York criminal procedure law, appellant's constitutional right to counsel had attached at the time he made the incriminating statements. The use for impeachment purposes of those statements made in the absence of counsel was error. Such error, however, was harmless beyond a reasonable doubt, in view of the overwhelming evidence of guilt.
 
 
 31
 We affirm the judgment of the district court which denied the petition for a writ of habeas corpus.
 
 
 32
 Affirmed.
 
 
 
 [1]
 Although the record before us is incomplete in this respect, at some point recalcitrant counsel was replaced by new counsel who represented appellant at the hearing and at trial