**UNITED STATES of America, Appellee,**

v.

**Pedro J. CHARRIA,
Defendant–Appellant.**

**No. 1516, Docket 90–1120.**

United States Court of Appeals,
Second Circuit.

Argued July 19, 1990.

Decided Dec. 3, 1990.

Domenick J. Porco, New York City (Martin L. Schmukler, New York City, of counsel), for defendant-appellant.

Stephen C. Robinson, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Kerri Martin Bartlett, Asst. U.S. Atty., of counsel), for appellee.

Before WINTER, MAHONEY and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Pedro J. Charria appeals from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*), convicting him after a jury trial of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and sentencing him to concurrent terms of imprisonment of twenty-five years and ten years, respectively. Charria's principal challenge concerns his waivers of the right to counsel effected during his consents to questioning and to a search following his arrest pursuant to a filed indictment, as to the existence of which, he now says, he was never informed. He also challenges the district court's application of the Sentencing Guidelines' obstruction of justice and acceptance of responsibility adjustments, and its failure to downwardly depart. Because we find that the defendant's knowing and voluntary waivers of his sixth amendment right were constitutionally adequate and we conclude that Judge Keenan properly applied the Sentencing Guidelines, we affirm.

## BACKGROUND

On October 6, 1988, following an extensive undercover operation, Charria and sixteen others were indicted for conspiracy to distribute narcotics and various money laundering violations. According to the trial evidence, the sufficiency of which is not disputed, Charria, the New York accountant for a member of a Colombian drug cartel, conspired to distribute cocaine and conducted a transaction designed to conceal and disguise illegal narcotics proceeds. Of the remaining defendants, only two others have been apprehended to date; both pled guilty to a single count of money laundering prior to Charria's trial.

*Circumstances of Charria's Arrest and the Search*

On October 9, 1988, agents of the United States Customs Service arrived at Charria's home in Dix Hills, Long Island, with an arrest warrant. After knocking on the door and ringing the doorbell, the agents were let inside by the defendant's wife. Several of the agents, with guns drawn, entered the defendant's bedroom, where they found Charria in his underwear. The agents told him in English that he was under arrest and asked him if he had any weapons, to which he responded that he did not. They then took him to the kitchen, where they again told Charria that he was under arrest and showed him a copy of the arrest warrant, which indicated that he was under indictment for conspiracy to distribute cocaine and money laundering. Although he did not raise the issue below, Charria asserts on appeal that he was not adequately informed of the existence of the indictment, despite testimony by two agents that, in addition to showing him a copy of the warrant, one of them explained to him that he was under indictment for the two offenses.

After viewing the arrest warrant, Charria began to reply, "I didn't do anything," but was interrupted by an agent who orally administered, in English and Spanish, the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At this juncture, no weapons were drawn and Charria was not handcuffed. Charria then signed "Advice of Rights" forms printed in both languages that waived his right to remain silent. He then told the agents that "he didn't know anything about any of those things, and [that] he was in the glass etching business."

Thereafter, the agents asked for, and received, Charria's oral consent to search his house. He also executed "Consent to Search" forms in English and Spanish. He thereupon admitted having a gun and directed the agents to a file cabinet in the basement where they found a weapon. The agents then discovered a Redweld envelope under Charria's desk, inches from where the gun had been seized, containing voluminous drug records. When one agent asked Charria about the contents of the envelope, Charria responded, "That's what's going to get me in trouble." The

agents also found address books, receipt books, a beeper and a cellular telephone in the basement.

The agents then walked outside with Charria and noticed a pile of ashes in the driveway. Underneath the ashes, still in a readable condition, were other drug records matching those found in the Redweld envelope. Charria told the agents that he had burned those materials the night before when he was outside and wanted to keep warm. Similar records were found in a nearby garbage can. Attempting to explain the existence of the records, Charria told the agents that while he was on vacation in Colombia, two unknown men asked him if he would store some financial records for someone in New York, and thereafter, a certain individual would beep him and arrange to meet him to transfer the records.

*Charria's Suppression Motions in the District Court*

Before trial, Charria filed a motion to suppress his oral statements and the physical evidence seized from his residence on the day of his arrest. The district court concluded that, despite the fact that he was under arrest and in custody, Charria had been neither coerced nor misled into consenting to the search or making the statements in violation of either the fourth or fifth amendments. Charria does not challenge the district court's finding of "voluntary and intelligent" waivers of these rights.

In a renewed suppression motion under the sixth amendment, Charria, relying on our decisions in *United States v. Satterfield*, 558 F.2d 655 (2d Cir.1976), and *United States v. Mohabir*, 624 F.2d 1140 (2d Cir.1980), raised the issue of whether the right to counsel during postindictment interrogation is compromised by law enforcement officials' obtaining uncounselled consents to questioning and search without first bringing the defendant before a neutral judicial officer for an explanation of the sixth amendment right. The district court ruled that, under *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the sixth amendment does not require judicial supervision of a waiver of the right to counsel during postindictment questioning, and found that, after being given the appropriate *Miranda* warnings, Charria had made a knowing and intelligent waiver of his sixth amendment right, as well as his fourth and fifth amendment rights. Charria does not press this argument on appeal, but instead asserts that for a sixth amendment waiver by an indicted defendant to be effective, the defendant must be informed of the indictment, which he now alleges never occurred.

*Charria's Conviction and Sentence*

The jury found Charria guilty on Count One of conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and on Count Two of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. Judge Keenan imposed concurrent prison terms of 25 years on Count One and 10 years on Count Two, plus a $50,000 fine and five years supervised release on Count One. Unlike the sentence on Count Two, which alleged conduct prior to the November 1, 1987 effective date of the Sentencing Guidelines, the sentence on Count One was governed by the Guidelines as the conspiracy continued past that date. The district court based Count One's 25–year prison term upon an adjusted offense level of 40 which, at the criminal history category I applicable to Charria, carries a range of incarceration of 292 tu 365 months. Level 40 was arrived at from: (a) the documents found in Charria's home that reflected the transfer of over 7,766 kilograms of cocaine and earnings of over $106 million and resulted in a base offense level of 36 under Guidelines § 2D1.1(a)(3); (b) Charria's possession of a weapon during the commission of the crime that resulted in a two-point enhancement under § 2D1.1(b)(1), and (c) a two-point enhancement for obstruction of justice under § 3C1.1 based upon Charria's burning of drug records and his attempt to deceive the arresting agents by initially denying having a weapon and by lying about how the documents became burned and how he acquired them. The district court declined to award Charria a two-level reduction for acceptance of responsibility

under § 3E1.1, and to downwardly depart from the Guidelines range.

## DISCUSSION

### I. Sixth Amendment Right to Counsel

■ On appeal, Charria contends that his waivers of his sixth amendment right to counsel during the postindictment questioning and search of his house were ineffective because the arresting officers did not inform him of the indictment pending against him, and therefore the fruits of that questioning and search should have been suppressed at trial.[1] Charria does not challenge the fact that he was not brought before a neutral judicial officer prior to his waiver. Nor does he assert that he was never given the appropriate *Miranda* warnings. He asserts only that in order for an indicted defendant to effectively waive the right to counsel he must, in addition to being advised of his *Miranda* rights, be informed by an arresting officer of the indictment pending against him. The sole issue before us, therefore, is whether an indicted defendant who has been given the *Miranda* warnings but not informed of the indictment against him may waive the right to counsel when consenting to custodial questioning and a search of his home.

■ The sixth amendment assures a defendant the benefit of assistance of counsel if desired at any "critical stage" of the criminal proceedings against him. *Michigan v. Jackson*, 475 U.S. 625, 632 & n. 5, 106 S.Ct. 1404, 1409 & n. 5, 89 L.Ed.2d 631 (1986); *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985); *United States v. Kon Yu–Leung*, 910 F.2d 33, 37–38 (2d Cir.1990); *Meadows v. Kuhlmann*, 812 F.2d 72, 75–76 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Accordingly, when evaluating the sufficiency of a defendant's

waiver of sixth amendment rights, "the pivotal threshold question" is whether the waiver occurred at a critical stage of a criminal proceeding. *Kon Yu–Leung*, 910 F.2d at 38. Any stage of a criminal prosecution " 'where absence of defense counsel or lack of advice might derogate from the accused's right to a fair trial' " is critical. *See id.* (quoting *United States v. Jackson*, 886 F.2d 838, 843 (7th Cir.1989)). Even at a critical stage, however, the sixth amendment right to counsel can be knowingly and voluntarily waived by a criminal defendant who has been made fully aware of the nature of the right being abandoned and the consequences of abandonment. *Patterson v. Illinois*, 487 U.S. 285, 292–97, 108 S.Ct. 2389, 2394–97, 101 L.Ed.2d 261 (1988); *see also Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

As to each of the two sixth amendment waivers effected by Charria—his waiver of the right to counsel during consent to questioning and his waiver of the right to counsel during consent to a search—we face a two-stage inquiry: was the waiver given at a critical stage where the right to counsel attached and, if so, could Charria have effectively waived the right to counsel after being apprised of his *Miranda* rights without being informed of the indictment pending against him? Of course, if there was no critical stage, then Charria has no sixth amendment claim.

There can be no doubt that Charria had the right to have the assistance of counsel when he consented to postindictment questioning by law enforcement authorities. *See Patterson v. Illinois*, 487 U.S. at 290, 108 S.Ct. at 2394; *Michigan v. Jackson*, 475 U.S. at 629–30, 106 S.Ct. at 1407–08. Regarding his consent to the search of his home, we have held that in at least some

---

**1.** We assume for purposes of this appeal the truth of Charria's appellate claim that he was not informed of the pending indictment. We note, however, that although the district court made no finding on this issue, there is evidence in the record—the notation on the arrest warrant and the testimony of the agents—from which the district court, if asked, could have found that the defendant was so informed. If the result of this appeal turned on whether the defendant was so informed, we would remand for a hearing and finding. As it does not, we do not.

circumstances a postindictment consent to search is not a critical stage implicating the sixth amendment right. *See Kon Yu-Leung,* 910 F.2d at 39–40. Arguably, Charria's consent to search was a critical stage because it was intertwined with post-indictment interrogation. *See id.* at 40 (consent to search not critical in part because, "[n]o evidence was generated, as in the case of incriminating testimony, that was not already in existence and virtually certain to be available to the government in due course."). However, we need not decide whether the consent to search in this case was a critical stage because we find that Charria had validly waived any right to counsel he may have had at that time, as well as the right that had certainly accrued during the questioning itself.

The Supreme Court has counselled us to be "pragmatic" in assessing whether the sixth amendment right has been properly waived. *Patterson,* 487 U.S. at 298, 108 S.Ct. at 2398. Factors that bear on the adequacy of a sixth amendment waiver include:

> the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts.

*Id. Patterson's* pragmatic approach supersedes previous rulings of this circuit which, based on the concept of a hierarchy of constitutional rights, called for a higher "knowing and intelligent" standard for sixth amendment waivers than for other waivers. We had established that, in order to effectively waive the right to counsel during postindictment questioning, an accused had to be informed of his indictment—including the significance thereof—by a neutral judicial officer. *United States v. Mohabir,* 624 F.2d 1140, 1146–53 (2d Cir.1980); *Carvey v. LeFevre,* 611 F.2d 19, 21–22 (2d Cir.1979), *cert. denied,* 446 U.S.

921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980); *United States v. Satterfield,* 558 F.2d 655, 657 (2d Cir.1976).

*Patterson* held that *Miranda* warnings sufficed for a "knowing and intelligent" waiver of the sixth amendment right to counsel during postindictment questioning, and consequently rejected the contention, citing *Mohabir,* that the sixth amendment right to counsel is "superior" to or "more difficult" to waive than its fifth amendment counterpart. *See* 487 U.S. at 292–300, 108 S.Ct. at 2394–99. Despite *Patterson,* Charria contends that this Circuit should continue to adhere, at least partially, to its now-outmoded hierarchy-of-rights analysis. While Charria concedes that, after *Patterson,* an indicted defendant no longer need be brought before a neutral judicial officer in order to waive the right to counsel during questioning, *see Patterson,* 487 U.S. at 295–96 n. 8, 108 S.Ct. at 2395–96 n. 8, he notes that the Supreme Court left open the issue of whether an accused must be informed that he has been indicted before a postindictment sixth amendment waiver will be valid. *See id.*[2]; *see also Kon Yu–Leung,* 910 F.2d at 40. Charria urges that even after *Patterson* arresting officers must advise defendants of any pending indictments before soliciting sixth amendment waivers.

■ Accepting that Charria was not informed of the indictment against him, *see supra* n. 1, we believe that his argument would make a patchwork of the law in this area—retaining procedures premised on the need to effect a supposed "distinction between Fifth and Sixth Amendment rights," *Mohabir,* 624 F.2d at 1147, after the Supreme Court has recognized that "there [is no] support ... for the notion that because a Sixth Amendment right may be involved, it is more difficult to waive than the Fifth Amendment counterpart." *Patterson,* 487 U.S. at 297–98, 108 S.Ct. at 2397–98. *Patterson* counsels a shift in

**2.** Beyond leaving open the question of the necessity of informing an accused of a pending indictment before a sixth amendment waiver is solicited, the Supreme Court expressly rejected *Mohabir's* holding that some "additional" warnings or discussions with an accused, other than

those compelled by *Miranda,* are required to effectuate a sixth amendment waiver during postindictment questioning, or that any waiver in this context can only properly be made before a neutral judicial officer. 487 U.S. at 295–96 n. 8, 108 S.Ct. at 2395–96 n. 8.

sixth amendment waiver analysis away from the abstract importance of the right to counsel and toward a practical inquiry into:

> what purposes a lawyer can serve at the particular stage of the proceedings in question and what assistance he could provide to an accused at that stage [in order] to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized.

*Id.* at 298, 108 S.Ct. at 2398. Charria's argument would undermine this shift, and, further, is inconsistent with *Patterson's* conclusion that *Miranda* warnings suffice to effect a valid sixth amendment waiver during postindictment questioning. Once an accused understands that he is under arrest and, after receiving the *Miranda* warnings, understands his right to remain silent, the potential consequences of speaking, and his right to counsel, including during interrogation, he is fully apprised of the information needed to make a knowing waiver of the sixth amendment right; providing him with the information that he is also under indictment, the desirability of which is debatable, *see Patterson,* 487 U.S. at 295–96 n. 8, 108 S.Ct. at 2395–96 n. 8, is not constitutionally required.

■ As there is no "substantial difference between the usefulness of a lawyer to a suspect during [preindictment] custodial interrogation, and his value to an accused at postindictment questioning," *id.* at 299, 108 S.Ct. at 2398, we hold that giving an indicted defendant *Miranda* warnings is sufficient to make "knowing and intelligent" his waiver of the sixth amendment right to counsel, even if the defendant has not been expressly informed of the indictment pending against him.[3]

Under *Patterson's* pragmatic approach, Charria's waivers were constitutionally adequate. The dangers of self-representation during Charria's consent to questioning were simple, obvious and intuitive. During postindictment questioning, "a lawyer's role is rather unidimensional: largely limited to advising his client as to what questions to answer and which ones to decline to answer." *Id.* at 294 n. 6, 108 S.Ct. at 2395 n. 6. Even absent being informed that he was under indictment, the *Miranda* warnings gave Charria ample notice of the dangers of self-representation at a critical stage in the proceedings against him.

Charria's attempt to limit *Patterson's* import to postindictment questioning, as opposed to a consent to search, is unavailing. There is nothing in *Patterson* to suggest that the *Miranda* warnings found adequate in the postindictment questioning context would not also suffice for a consent to search, or that a postindictment waiver regarding a consent to search mandates a higher "knowing and intelligent" standard than a waiver regarding a consent to questioning.

If during postindictment questioning a lawyer's role is limited to advising his client which questions to answer, the same limited role obtains regarding a postindictment search. After consenting to a search, a defendant is a purely passive player and requires no " 'aid in coping with legal problems or assistance in meeting his adversary.' " *Id.* at 298, 108 S.Ct. at 2398 (quoting *United States v. Ash,* 413 U.S. 300, 313, 93 S.Ct. 2568, 2575, 37 L.Ed.2d 619 (1973)). Beyond advising a client not to consent to a search, the advocate's role is an extremely limited one during this phase of the criminal proceedings. Moreover, Charria clearly understood the dangers to him associated with the search, as he initially lied to the arresting agents about having a gun, attempted to destroy drug records, and referred to the documents in the house as something that was "going to get me in trouble."

---

**3.** The record does not disclose, and Charria does not allege, that he had retained or accepted the appointment of a lawyer to represent him at the time he consented to questioning and the search, and thus the "distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship" that attach to a defendant once counsel has in fact been retained are inapplicable. *Patterson,* 487 U.S. at 290 n. 3, 296–97 n. 9, 108 S.Ct. at 2393 n. 3, 2396–97 n. 9.

Accordingly, we hold that, in connection with his postindictment questioning and consent to search, Charria's waivers to the arresting officers of his sixth amendment right to counsel were effective.

## II. Application of Sentencing Guidelines

On appeal, Charria renews his attempt to reduce his adjusted offense level under the Guidelines, claiming that he was entitled to a two-point reduction for acceptance of responsibility and did not deserve a two-level enhancement for obstruction of justice. Failing this, he also urges that the district court should have downwardly departed, asserting that the Guidelines sentence was unreasonably harsh given his allegedly minor role in the offenses.

■ The argument that the district court impermissibly failed to downwardly depart from the Guidelines is easily disposed of; it is unreviewable, absent a showing that a violation of law occured or that the Guidelines were misapplied. *United States v. Adeniyi*, 912 F.2d 615, 618–19 (2d Cir. 1990); *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). There is no such showing here.

■ We address the district court's application of the acceptance of responsibility and obstruction of justice provisions mindful that we must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988). Thus while purely legal issues arising from the interpretation of the Guidelines are reviewed *de novo*, the district court's interpretation of facts and application of clear standards to those facts are reviewed under a "clearly erroneous" standard. *See United States v. Shoulberg*, 895 F.2d 882, 884 (2d Cir.1990); *United States v. Stroud*, 893 F.2d 504, 506–07 (2d Cir.1990); *United States v. Moskowitz*, 888 F.2d 223, 227–28 (2d Cir.1989) [*Moskowitz II*]; *United States v. Moskowitz*, 883 F.2d 1142, 1155 (2d Cir.1989).

■ Noting that a reduction for acceptance of responsibility under Guidelines § 3E1.1 is available notwithstanding the fact that a defendant exercises his constitutional right to a jury trial, *see* § 3E1.1(b) and Application Note 2, Charria reasons that because he did not contest certain parts of the government's case in chief at trial, he is entitled to the reduction for having voluntarily admitted his involvement in the offense charged. *See id.* at Application Note 1(c). Charria also urges that by consenting to a search of his home and by admitting to one of the arresting agents that certain recovered documents would get him in trouble, he "voluntar[ily] assist[ed] [the] authorities in the recovery of the fruits and instrumentalities of the offense." *Id.* at Application Note 1(e).

The district court's determination that there was no acceptance of responsibility by Charria was not clearly erroneous. At no time did Charria voluntarily admit his guilt. Instead, during a presentence interview, he characterized himself as a pawn, despite the extensive drug records under his control, and referred to his involvement in the conspiracy as a set of "isolated acts." *See Moskowitz II*, 888 F.2d at 227; *United States v. Ortiz*, 878 F.2d 125, 128 (3d Cir.1989). The district court was free to discount the last-minute expression of remorse by the defendant, *see United States v. Rios*, 893 F.2d 479, 481 (2d Cir. 1990); *United States v. Barreto*, 871 F.2d 511, 513 (5th Cir.1989), and to conclude that Charria's cooperation with the arresting agents was motivated by self interest rather than genuine contrition. *See United States v. Spraggins*, 868 F.2d 1541, 1543 (11th Cir.1989).

■ In making his obstruction determination under § 3C1.1, the district court found that Charria "burned records, he lied to the agents, and in my judgment, he clearly obstructed justice." Expanding on this ruling, the court stated that Charria "lied to the agents about the documents and how they were burned, he lied to the agents about how he got the documents, and he initially lied about whether he had a gun, and in my judgment those three lies

taken together amount to an obstruction of justice...." This finding was not clearly erroneous.

In challenging the district court's obstruction enhancement, Charria first argues that he quickly recanted his initial false statement to the agents regarding possession of a gun, and thus he should not be punished for a moment's indiscretion. However, in determining whether Charria's overall conduct was calculated to mislead or deceive the authorities, *see United States v. Irabor*, 894 F.2d 554, 556 (2d Cir.1990); *United States v. White*, 903 F.2d 457, 463 (7th Cir.1990), a sentencing judge may weigh evidence of even a quickly recanted lie. Here, the district court's finding plainly encompassed more than just this lie; it included the lies concerning the drug records and the attempt to destroy some of those documents. *See Irabor*, 894 F.2d at 556 (prearrest destruction of documentary evidence warrants § 3C1.1 increase as guideline applies to obstructive conduct both before and after initiation of formal proceedings against defendant).

We have considered Charria's remaining arguments and find them without merit. The judgment of the district court is affirmed.