**UNITED STATES of America, Appellee,**

v.

**Nadine BAKER, Appellant.**

**No. 90 Cr. 0203 (RWS).**

United States District Court,
S.D. New York.

July 31, 1991.

138

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for appellee; Andrew J. Maloney, III, Asst. U.S. Atty., of counsel.

The Legal Aid Soc., Federal Defender Services Appeals Unit, New York City, for appellant; Darrell B. Fields, of counsel.

## OPINION

SWEET, District Judge.

Nadine Baker ("Baker") has appealed from a judgment of conviction entered in the United States District Court for the Southern District of New York on January 7, 1991, following a four-day trial before the Honorable Barbara A. Lee, United States Magistrate Judge, and a jury. For the reasons set forth below, the judgment is affirmed, and the appeal dismissed.

*Prior Proceedings*

Information 90 Cr. 203 was filed on April 10, 1990 in two counts. Count One charged Baker with petit theft at the Bronx Veterans Hospital, in violation of Title 18, U.S.C., § 13, applying New York State Penal Law, § 155.25 under the Assimilative Crimes Act. Count Two charged Baker with simple possession of cocaine, in violation of Title 21, U.S.C., §§ 812, 841(a)(1), and 844. On January 25, 1990, Count Two was dismissed on the joint application of the government and defendant.

Trial on Count One began on August 9, 1990, and concluded on August 14, 1990, when the jury found Baker guilty. On January 7, 1991, Magistrate Judge Lee sentenced Baker to six months incarceration and a $25 special assessment. Notice of appeal was filed on January 14, 1991, and the appeal was heard on May 13, 1991.

*The Facts*

After thefts of personal property from patients' rooms at the Veterans Administration ("VA") Hospital in the Bronx, VA Police sought to catch the thief. On February 15, 1990, Officer Edward Grenawalt ("Grenawalt") sprinkled a wallet and a small change purse with invisible purple dye that became visible when it came in contact with moisture. The contents of the

wallet and purse—a five dollar bill and four singles, as well as some coins—were also covered with ultraviolet dye, visible only under an ultraviolet light. The five dollar bill and two singles were placed in the wallet, while the other two singles and change went into the change purse. The wallet and purse were placed in room 6 but remained undisturbed.

On February 16 Grenawalt placed the wallet inside the nightstand in room 6 on Ward 8B of the hospital, while the change purse was placed in the pocket of a hospital shirt and left at the end of the patient's bed in room 3 on Ward 8B. The bed-care patients in each of these rooms were apprised of the police plan and consented. The property was last seen intact by Grenawalt at approximately 1:00 p.m. on February 16, 1990. Grenawalt advised Albert Lugo ("Lugo"), the head nurse in charge of all nursing personnel on the ward, to contact VA Police if he saw anyone with dye on their hands or clothing.

At approximately 3:30 p.m. that day, nurse Luis Rivera ("Rivera") saw Baker come out of room 4 and noticed that she had "blue" dye on her hands. According to Rivera, Baker apparently noticed the dye at that point and said, "What the hell is that? I don't know what the hell this comes from." She then took an alcohol pack and tried to wipe off her hands.

Rivera saw Baker at the nurse's station attempting to rid the dye from her hands with rubbing alcohol, after which Baker went in the direction of the women's locker room. The next time Rivera saw Baker was approximately five to six minutes later when the VA police arrived.

Lugo saw Baker coming out of room 3 trying to wash purple dye off her hands. Lugo immediately called the VA police. Baker had been assigned to both rooms 6 and 3 on Ward 8B that afternoon. Upon being called by Lugo, Grenawalt and two other VA police officers immediately went to the eighth floor and confronted Baker as she was attempting to wash the dye off her hands with rubbing alcohol. The five dollar bill had been removed from the wallet that had been placed in the patient's night-

stand in room 6. The change purse and hospital shirt had been removed from the patient's bed in room 3 and were found in the bathroom sink that connected rooms 3 and 4. The purse was in the pocket of the hospital shirt, contents of the purse had been rearranged, and the money was sticking out. Purple water was found on the sink and floor in the bathroom between rooms 3 and 4. The wallet was not checked for fingerprints.

Upon seeing the VA police Baker said "Oh you again?" and turned to a co-worker and said, "They're setting me up." Baker was then taken to a nurses' station and exposed to an ultraviolet light that showed the presence of ultraviolet powder on her clothing, hands, and around her mouth as well as under her fingernails which appeared to have been bitten. Baker was later searched but the missing five dollar bill was not recovered and her locker and purse were free of dye stains.

After Baker was confronted by VA police, Lugo went from room to room on the floor to see if there was "any visitor or any other employee, [or] any other patient with dye on," and did not see anyone else with dye. Grenawalt also assigned another officer to check to see if any other individual had dye on their hands. No one else was seen with any of the dye on their hands, person or clothing.

Visitors were permitted on the floor after 2:00 p.m. and no record was maintained as to who or how many they were. No one leaving the floor was checked for dye stains.

Baker later told Associate Chief Nurse Helen Roman that on the date of the incident she went to room 4 to change the shirt of patient Jack Ross. According to Roman, Ross was a bed-care patient who was unable to leave his bed by himself. Baker claimed that when she took the shirt off, it struck the wall with a thud. Baker claimed she then noticed the change purse and only opened it to see what was inside and whether it belonged to the patient Ross. Baker said that Ross claimed it was his, and she finished changing him. Baker told Nurse Roman that she then noticed the

purple dye on her hands and went to the bathroom sink to wash it off. When Baker was caught, the patient in room 4, Ross, was checked on by Grenawalt and Ross did not have any dye on his body, clothes or bed. Ross was unable to leave his bed.

After the jury verdict of guilty, the Probation Department determined that under the United States Sentencing Guidelines ("USSG"), the appropriate guideline section for Baker's offense was 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) which provided for a base offense level of 4. The Probation Department then added two points under section 2B1.1(b)(3) on the grounds that the thefts were from the person of the victims. It reasoned that "Application Note 3 to Section 2B1.1 specifically refers to property taken that was within arm's reach of the victim." The Probation Department also added an additional two points on the grounds that the patients in the hospital were vulnerable victims, under USSG § 3A1.1. This brought Baker's total adjusted offense level to 8.

Because Baker had no criminal history points, her criminal history category was I. The guideline range for an offense level of 8 and a criminal history category of I is 2 to 8 months imprisonment. If the enhancement for theft from the person had not been applied, the corresponding guideline range would have been 0 to 6 months imprisonment.

The Second Circuit Court of Appeals has frequently stated the standards by which sufficiency claims must be assessed. *See United States v. Salerno*, 868 F.2d 524, 530 (2d Cir.), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Diaz*, 878 F.2d 608, 611 (2d Cir.), (quoting *United States v. Chang An–Lo*, 851 F.2d 547, 553 (2d Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)), *cert. denied*, —— U.S. ——, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989). "The verdict of a jury must be sustained if there is substantial evidence ... to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

*Accord, United States v. Wiley*, 846 F.2d 150, 153 (2d Cir.1988).

■ In addition, the evidence must be viewed "in the light most favorable to the Government," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.1989), and a reviewing court must draw all reasonable inferences, and resolve all issues of credibility, in favor of the verdict. *United States v. Chang An–Lo, supra*, 851 F.2d at 554. Furthermore, pieces of evidence must be viewed "not in isolation but in conjunction." *United States v. Carson*, 702 F.2d 351, 362 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). To be sufficient, the evidence need not have excluded every possible hypothesis of innocence. *United States v. Chang An–Lo, supra*, 851 F.2d at 554. Rather, if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be upheld. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir.1986) (citations omitted).

■ Applying those principles to the facts of this case, the evidence was sufficient to support the jury's guilty verdict. Viewing the evidence in the light most favorable to the government, and drawing all inferences in favor of the verdict, the evidence showed that Baker was a nurse's assistant working on Ward 8B of the VA Hospital on February 16, 1990 in rooms 1 through 8 during the day from 7:30 a.m.—4:00 p.m. The thefts occurred in rooms 3 and 8 and also involved room 4. The thefts took place between 1:00 p.m. and 3:30 p.m. on February 16, 1990.

Baker, and only Baker, was caught at approximately 3:30 p.m. with visible purple dye and invisible ultraviolet dye, on her hands and clothing which established that she had touched the purse and/or wallet and the money that was inside them. She was seen coming out of room 3 where the purse and shirt had been initially placed. The purse and shirt were found in the bathroom between rooms 3 and 4. No one else was located on the floor with the dye

on their person or clothing. Baker had time to dispose of the $5 bill and made false exculpatory statements to Nurse Roman.

Baker argues that other people may have had access to the rooms in question and that no one checked the hands or clothing of others. However, Grenawalt assigned an officer to check others for the presence of dye and Grenawalt checked patients in rooms 3, 4 and 6. Lugo went from room to room on the floor to see if any visitor, employee or patient had dye on their person or clothing. The shirt with the change purse had been left by the sink in the bathroom connecting rooms 3 and 4, there was purple water in the sink and floor, and Baker admitted that she had attempted to wash the dye off her hands before leaving the bathroom connecting rooms 3 and 4.

Thus viewed, the facts were presented to the jury sufficient to permit the inference that Baker picked up the property, took the $5 bill from room 6, attempted to take money from the change purse she found in room 3, and discovering that there was dye on the inside and outside of the purse, tried to dispose of the evidence.

In addition, Baker's exculpatory statements could be considered false on the state of the record and thus support an inference of consciousness of guilt.

The jury's findings of fact were based on direct and circumstantial evidence as well as credibility determinations with respect to live witnesses. No challenge is made to the charge pursuant to which the verdict was reached. Drawing all inferences in favor of the verdict, there is sufficient evidence to support the conviction.

As to the sentence, evidence at trial showed by a preponderance that the patients on Ward 8B of the VA Hospital, specifically in rooms 3 and 6 were confined to their rooms and could not get out of bed on their own. The $5 bill in question was placed in room 6 where the patient was not ambulatory. Witnesses testified at trial that these particular patients were in the rooms when the property was placed there at 1:00 p.m. on February 16, 1990, and immediately after Baker was caught with the incriminating dye on her hands at approximately 3:30 p.m. that same day.

Guideline § 2B1.1(b)(3) provides for a two-level enhancement when a theft is "from the person of another." Application note (7) to § 2B1.1(b)(3) defines theft from a person as "property taken without the use of force that was being held by a person or was within arms' reach."

The court below found that the evidence at trial showed by a preponderance that the thefts took place within arms' reach of hospital patients as defined by guideline application note (7). That finding, based on the preponderance of the evidence at sentencing, may not be overturned on appeal unless clearly erroneous. *See United States v. Charria*, 919 F.2d 842, 849 (2d Cir.1990); *United States v. Bakhtiari*, 913 F.2d 1053, 1063 (2d Cir.1990); *United States v. Lanese*, 890 F.2d 1284, 1291 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

The court below correctly applied the appropriate guidelines range and the defendant's sentence was well within that range and is, therefore, affirmed.

For the foregoing reasons, the conviction and sentence are affirmed.

It is so ordered.