UNITED STATES of America, Appellant,

v.

**Bendle CHADWICK, Appellee.**

**No. 93–1269.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1993.

Decided July 29, 1993.

Michael D. Johnson, Asst. U.S. Atty., Little Rock, AR, argued, for appellant.

Craig Lambert, Little Rock, AR, argued (Wayne Davis, on brief), for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

WOLLMAN, Circuit Judge.

The United States appeals from the district court's order granting Bendle Chadwick's motion to suppress. We reverse.

## I.

In April 1992, a United States Forest Service employee discovered two patches of marijuana on Forest Service land in Arkansas. Upon closer inspection, the employee determined that someone had been actively cultivating the patches. In response, the Forest Service, in conjunction with the Stone County, Arkansas Sheriff's Department, set up concealed, movement-activated video cameras to survey the plots. Some time later, on April 21, 1992, the video cameras recorded two individuals tending the patches. Upon viewing the video tape, the officers determined that the individuals were Chadwick and his father-in-law, George McClanahan.

Sometime during the spring of 1992, the exact time being in dispute, Chadwick contacted Stone County Deputy Sheriff Jerry Fletcher, his brother-in-law, and offered to reveal the whereabouts of several marijuana patches to him. During the next few months, Chadwick revealed the locations of several patches, most of which were on Forest Service Land.

In June, it was determined to bring the case against Chadwick and McClanahan in federal rather than state court, and, on July 21, 1992, the United States Attorney's Office for the Eastern District of Arkansas present-

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

ed the case to a federal grand jury. Doug Ryan, a special agent in the United States Forest Service, testified at the grand jury proceeding. Following his testimony, superiors asked him to contact Chadwick and McClanahan, advise them of their rights and the evidence against them, and interview them. Ryan left the grand jury proceedings and travelled some 125 miles to interview Chadwick.

Agent Ryan interviewed Chadwick at the latter's house on July 23, 1992. Ryan was accompanied by Stone County Sheriff Billy Don Long and Forest Service Officer Don Shipman. Ryan commenced the interview by reading Chadwick the *Miranda* warnings and obtaining a written waiver of rights from Chadwick. Ryan did not inform Chadwick that he had been indicted by the grand jury, Ryan himself being unaware of this fact at the time he conducted the interview. Ryan informed Chadwick about the video tape revealing Chadwick's participation in the cultivation of the two marijuana patches on April 21, 1992, and asked Chadwick if he wanted to make a statement. Chadwick stated that he had helped his father-in-law cultivate the patches, but that they belonged to McClanahan, who had originally planted the patches himself. Chadwick stated further that the other patches he had revealed to Fletcher also belonged to McClanahan. Chadwick signed a written statement at the conclusion of the interview. Ryan, Long, and Shipman then left. At no time during the interview did Ryan place Chadwick under arrest.

Chadwick filed a motion to suppress the incriminating statements he had made during the July 23 interview. Chadwick presented two principal arguments to the district court at the hearing on the suppression motion: (1) that his waiver was invalid because he had been intoxicated at the time of the interview; and (2) that the waiver was invalid because Ryan had not informed Chadwick of the fact that he had been indicted before obtaining it. The district court found that Chadwick had not been intoxicated to the degree necessary to affect the voluntariness of his waiver. After hearing testimony on the second issue, the court requested the parties to submit briefs on the issue whether the government

agents were required to inform Chadwick that he had been indicted before they attempted to procure a waiver of his *Miranda* rights and obtain a statement from him.

After reviewing the briefs, the district court entered a written order suppressing Chadwick's statement.

## II.

■ We review a district court's ruling on a motion to suppress evidence under the clearly erroneous standard. *United States v. Williams,* 981 F.2d 1003, 1005 (8th Cir.1992). "Under this standard, we 'ordinarily will affirm a decision unless there is not substantial evidence to support it, it evolves from an erroneous conception of the applicable law, or, upon considering the entire record, we are left with a definite and firm conviction that a mistake has been made.'" *Id.,* (quoting *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982)).

## III.

In *Patterson v. Illinois,* the Supreme Court expressly reserved the question presented here, namely, whether "in addition to the *Miranda* warnings, an accused should be informed that he has been indicted before a postindictment waiver is sought." 487 U.S. 285, 295 n. 8, 108 S.Ct. 2389, 2396, n. 8, 101 L.Ed.2d 261 (1988). Every circuit to have considered this issue, however, has held that the authorities need not inform the accused that he has been indicted before seeking a postindictment waiver. *See United States v. Charria,* 919 F.2d 842, 848 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991); *Riddick v. Edmiston,* 894 F.2d 586, 590–91 (3rd Cir.1990); *United States v. Muca,* 945 F.2d 88, 90–91 (4th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 983, 117 L.Ed.2d 145 (1992); *Quadrini v. Clusen,* 864 F.2d 577, 585–87 (7th Cir.1989); *Norman v. Ducharme,* 871 F.2d 1483, 1487 (9th Cir.1989), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990).

The district court acknowledged that appellate decisions following *Patterson* have held that a defendant may make a valid postindictment *Miranda* waiver without knowl-

edge of the indictment. The district court distinguished these cases on two grounds: (1) that in every case, the respective defendants were under arrest; and (2) that in the present case Ryan had indicated to Chadwick that his cooperation would "help" him. The district court concluded that "[t]he agent's statement could, and probably did, mislead defendant into believing if he cooperated and made a statement, no charges would be filed against him." Dist. Ct. Order of December 11, 1992, at 4.

## IV.

 The Sixth Amendment assures a defendant the benefit of assistance of counsel if desired at any "critical stage" of the criminal proceedings against him. *Michigan v. Jackson*, 475 U.S. 625, 632, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986). Even at a critical stage, however, the Sixth Amendment right can be knowingly and voluntarily waived by a criminal defendant who has been made fully aware of the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986).

 *Patterson* superseded a line of appellate authority which, based on the concept of a hierarchy of constitutional rights, called for a higher "knowing and intelligent" standard for waiving the Sixth Amendment right to counsel than for waiving other rights. *Charria*, 919 F.2d at 847. *Patterson* held that *Miranda* warnings sufficed for a "knowing and intelligent" waiver of the Sixth Amendment right to counsel during postindictment questioning and consequently rejected the contention that the Sixth Amendment right to counsel is "superior" to or "more difficult" to waive than its Fifth Amendment counterpart. *See* 487 U.S. at 297–98, 108 S:Ct. at 2397.

Although the district court correctly observed that the defendant in each of the relevant appellate decisions was under arrest, we do not find this factual distinction to be dispositive. In *Patterson*, the Court stated that the key inquiry to determine the validity of a Sixth Amendment waiver was whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel[.]" 487 U.S. at 292–93, 108 S.Ct. at 2395; *accord Gilbert v. Lockhart*, 930 F.2d 1356, 1358 (8th Cir.1991).

The Court articulated several reasons why *Miranda* warnings suffice to advise a defendant of his Sixth Amendment rights. First, *Miranda* warnings make it clear to the accused that he has the right to have an attorney present during questioning, to consult with an attorney, and to have one appointed for him if he cannot afford one of his own. *Patterson*, 487 U.S. at 293, 108 S.Ct. at 2395. The Court noted that after a government agent has advised the accused of his *Miranda* rights, there is little more that the accused can possibly be told in an effort to satisfy this portion of the waiver inquiry. *Id.* Second, the Court observed that the *Miranda* warnings also make the accused aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning by informing him "that any statement that he [makes can] be used against him in subsequent criminal proceedings." *Id.* Last, the Court noted that these warnings suffice to inform the accused concerning the value an attorney would be to him, namely, to advise him not to make any inculpatory statements. *Id.* at 294, 108 S.Ct. at 2395. These warnings, the Court stated, inform the accused "of the possible consequences of going without counsel during questioning." *Id.* at 294, 108 S.Ct. at 2395. Accordingly, the Court concluded that "[a]s a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of ·the consequences of abandoning those rights, so that his waiver on this basis will be a knowing and intelligent one." *Id.* at 296, 108 S.Ct. at 2397.

In the light of the holding in *Patterson*, and in view of the Court's skepticism about the proposition that it is even desirable to inform an accused that he has been indicted, 487 U.S. at 295 n. 8, 108 S.Ct. at 2396 n. 8

("Nor do we even pass on the desirability of so informing the accused—a matter that can be reasonably debated."), we follow the Second, Third, Fourth, Seventh, and Ninth Circuits and hold that law enforcement officers need not inform an accused that he has been indicted before seeking a waiver of his right to counsel.

## V.

 We examine next the district court's finding that Ryan's statement to Chadwick that his cooperation would "help" him also worked to invalidate Chadwick's waiver.

Chadwick signed his *Miranda* waiver at 4:30 p.m. and began to make his statement at approximately 4:45 p.m. Ryan testified that any assertion he made to Chadwick to the effect that making a statement would "help" him would have occurred in the interval between 4:30 p.m. and 4:45 p.m. Ryan's statement that Chadwick's cooperation would "help" him could not have had any impact on Chadwick's decision to waive his *Miranda* rights, since the waiver had occurred earlier. Thus, Ryan "did not induce the confession by either coercion or promises[,]" *Woods v. Armontrout,* 787 F.2d 310, 315 (8th Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 890, 93 L.Ed.2d 842 (1987), because his statement did not in any way influence the waiver.

Because Chadwick executed a knowing and intelligent *Miranda* waiver, he validly waived his Sixth Amendment right to counsel, and the inculpatory statements he made during the interview are admissible despite the fact that he was not informed that he had been indicted.

The order suppressing Chadwick's incriminating statement is reversed, and the case is remanded to the district court for further proceedings.