[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Steven A. Alexander was charged with eight counts of rape, three counts of corruption of a minor, and three counts of sexual imposition. After his motions to suppress evidence and his motion for a competency evaluation were overruled, Alexander pleaded no contest to the charges. The trial court found him guilty as charged and sentenced him accordingly. Alexander appeals.
The facts and procedural history are as follows.
On November 20, 1997, an indictment was filed charging Alexander with eight counts of rape. The next day, police officers questioned Alexander, searched his apartment, and arrested him. Alexander pleaded not guilty to the charges on November 25, 1997. On December 15, 1997, Alexander filed a motion to suppress "any and all statements, admissions or confessions" obtained from him and a motion for a determination of his competency to stand trial. The trial court conducted a hearing on January 6, 1998 and overruled both motions.
On January 23, 1998, the state amended the indictment, charging Alexander with eight counts of rape, three counts of corruption of a minor, and three counts of sexual imposition. Alexander pleaded not guilty to the amended charges on January 30, 1998. That same day, Alexander filed a motion to suppress "any and all items discovered as a result of an illegal search." The trial court conducted a hearing on February 3, 1998 and overruled the motion. On February 26, 1998, Alexander filed another motion to suppress any statements that he had made and "any evidence obtained as a result of these statements." Following a hearing, the trial court overruled the motion. On March 24, 1998, Alexander entered a plea of no contest, which the trial court accepted. Alexander was sentenced to ten years for each of the first seven counts of rape, to be served concurrent to each other; five years for the eighth count of rape, to be served consecutive to the ten-year sentences on the first seven counts. The sentences for corruption of a minor and sexual imposition were to run concurrent to each other and concurrent to the rape sentences. Alexander appealed on April 1, 1998. He raises three assignments of error.
 I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS INCULPATORY STATEMENTS MADE BY DEFENDANT TO POLICE OFFICERS, WHICH WERE ELICITED IN VIOLATION OF HIS RIGHTS PURSUANT TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.
Alexander contends that the trial court should have suppressed the statements obtained from him during the November 21, 1997 interview because the police officers had questioned him without first informing him of the return of a secret grand jury indictment charging him with rape.
The evidence presented at the suppression hearings established the following.
Sergeant Thomas Jones of the Yellow Springs Police Department testified that, at approximately 5:00 p.m. on November 21, 1997, he and Sergeant Nipper had arrived in a police cruiser at Alexander's place of work and had asked him "to come to the police department for some questioning," which he agreed to do. Upon arriving at the police station, Sergeant Jones told Alexander that "there had been accusations made about him that [he] wanted to ask him questions about" and, at 5:12 p.m., advised him of his Miranda
rights, using a "standard pre-interview form." After Sergeant Jones had read Alexander his rights and had asked whether he understood, Alexander initialed the statements of his rights and indicated verbally that he did understand. Alexander then wrote, "yes" beside the statement, "With full knowledge of these rights, I waive any rights and agree to give a voluntary statement," and signed the form. According to Sergeant Jones, Alexander did not appear to be under the influence of alcohol and seemed "very normal," clear headed, and even "happy to see us." Sergeant Jones testified that Alexander had not made any incriminating statements prior to signing the pre-interview form and that he had "never asked for an attorney" until the end of the interview — at approximately 9:30 or 10:00 p.m. — when he asked to speak to his aunt who "had some legal background." At that point, Sergeant Jones stopped questioning Alexander about the charges, and Alexander telephoned this aunt. Sergeant Nipper testified that he had not heard Alexander request an attorney during the interview. After hearing the testimony, the trial court overruled the motion.
At the February 3, 1998 suppression hearing, Jeffrey Gorrell, an investigator with the Greene County prosecutor's office, testified that he had arrived at the police station on November 21, 1997 with an indictment against Alexander that had been returned two days earlier. Gorrell did not inform Alexander of the grand jury indictment. He testified that the other officers had told Alexander about it later that evening after searching his apartment. Based on Gorrell's testimony about the indictment, Alexander's defense counsel asked the trial court to reconsider its ruling on the January 30, 1998 motion to suppress and subsequently filed another motion to suppress. At the March 10, 1995 hearing on this motion, the parties stipulated as follows:
 [T]hat the interviewing process happened somewhere * * * around 5:00 o'clock [p.m.]. That it continued for approximately 5 to 5 and a half hours. That during that period of time, the Defendant, was in the presence of Sergeant Jones, Sergeant Nipper and, Mr. Gorrell of the prosecutor's office. Not at all points in time were they all there, but they were there at numerous points in time during the interview process [and] that the process was an amicable situation. However, it is also stipulated that the officer present and the investigator present from the prosecutor's office were aware of the fact that there was an indictment [that] had been returned and did not disclose the return of the indictment until after the interview process.
Sergeant Jones testified that he had learned about the indictment earlier that day and that Gorrell had come to the police station to serve Alexander with the indictment and to assist with the interview. Alexander testified that the officers had told him that there were allegations against him but, in response to his question whether he was being arrested, they had said, "No. We just want to talk. We want to hear your side of the story. We want to clear all of that because there are two sides to every story." Alexander claimed that, although he had said, "this sounds like something [about which] I need to talk to an attorney," the officers had repeated that they simply wanted to hear his side of the story. He testified that, when learning about the indictment at approximately 11:00 or 11:15 p.m. that night, he "was the most shocked person in the world" because the alleged rape offenses had not been discussed during the interview. According to Alexander, the officers had questioned him about sexual conduct, such as inappropriate touching of a young person, but had not questioned him about rape. On rebuttal, Officer Jones testified that Alexander had not made statements about needing an attorney until asking to speak to his aunt at the end of the interview and that Alexander had been questioned about the rape charges.
Finding that Alexander had not asserted his right to counsel until the very end of the interview, that he had been fully apprised of and understood his rights, and that "there is no authority that mandates law enforcement must provide the Defendant with a status of the investigation and/or case, allowing Defendant to evaluate the need for counsel," the trial court overruled Alexander's February 26, 1998 motion.
Weighing the evidence and determining witness credibility at suppression hearings are matters within the trial court's discretion. State v. Mills (1992), 62 Ohio St.3d 357, 366. In this case, the trial court's resolution of the conflicting testimony on whether Alexander had asserted his right to counsel during the interview was not an abuse of discretion. Because it was reasonable to believe the testimony of Sergeants Jones and Nipper on the matter over Alexander's testimony, we will not disturb the trial court's finding that Alexander had not asserted his right to counsel until the end of the interview.
Alexander insists that, although he signed the pre-interview form waiving his Miranda rights, if he had known about the indictment, he would have invoked his right to counsel, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments. We agree that, absent a valid waiver of his rights, Alexander would have been entitled to the assistance of counsel at the police interview because criminal proceedings against him had commenced with the return of the indictment and because the interview was a "custodial interrogation." See Brewer v. Williams (1977),430 U.S. 387; Miranda v. Arizona (1966), 384 U.S. 436. The state bears the burden of proving a knowing, intelligent, and voluntary waiver by a preponderance of the evidence. Colorado v. Connelly
(1986), 479 U.S. 157, 168. In State v. Otte (1996), 74 Ohio St.3d 555,562, the Ohio Supreme Court explained that "[a] suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." The Sixth Amendment right to counsel is not more difficult to waive than its Fifth Amendment counterpart.Patterson v. Illinois (1988), 487 U.S. 285, 298. In Patterson, the Supreme Court explained:
 As a general matter, then, an accused who is admonished with the warnings prescribed by this Court in Miranda, 384 U.S., at 479, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.
Id. at 296. The Patterson court expressly stated that it would not address "whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid" and that it would not "even pass on the desirability of so informing the accused." Id. at 295-296, n. 8. Subsequently, several federal circuit courts decided that "law enforcement officers need not inform an accused that he has been indicted before seeking a waiver of his right to counsel." United Statesv. Chadwick (C.A. 8, 1993), 999 F.2d 1282, 1286. See, also, UnitedStates v. Bryson (C.A. 8, 1997), 110 F.3d 575, 582; United States v.Muca (C.A. 4, 1991), 945 F.2d 88, 90-91; Riddick v. Edmiston
(C.A. 3, 1990), 894 F.2d 586, 590-591; United States v. Charria
(C.A. 2, 1990), 919 F.2d 842, 848. We agree with the Second, Third, Fourth, and Eighth Circuits and hold that police officers need not inform a suspect that he has been indicted in order to secure a valid waiver of his Fifth or Sixth Amendment right to counsel. Thus, Alexander's waiver of his right to counsel was not invalidated merely because he was uninformed that he had been indicted.
Alexander also claims that his waiver was obtained through coercion because the officers, having known him prior to the interview, preyed upon his trust in them, treated him cordially, and assured him that they merely wanted to hear his side of the story. We cannot agree that Alexander's waiver was involuntary because the totality of the circumstances indicates that, although the police officers treated Alexander well and told him that they wanted to hear his side of the story, their conduct did not critically impair Alexander's capacity for self-determination. See Otte, 74 Ohio St.3d at 562. Because Alexander had been transported to the station in a police cruiser and was informed upon arrival of some allegations against him that the officers wanted to discuss, it was reasonable for the trial court to find that the officers did not deceive him into waiving his rights. Moreover, Sergeant Jones's testimony that he had reviewed with Alexander the pre-interview form, taking time to ensure that Alexander understood its contents, supports the trial court's finding that Alexander had not been coerced into signing the form. Alexander, who was forty-seven years old at the time of the interview and had completed sixteen years of schooling, did not suggest that he had lacked the capacity to understand his rights. Based on the totality of the circumstances surrounding Alexander's waiver of his rights, the trial court correctly determined that Alexander had knowingly, intelligently, and voluntarily waived his rights.
The first assignment of error is overruled.
 II. THE COURT ERRED IN FAILING TO SUPPRESS EVIDENCE GATHERED FROM A SEARCH CONDUCTED IN VIOLATION OF APPELLANT'S RIGHTS PURSUANT TO THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Alexander contends that the trial court should have suppressed any evidence obtained during the warrantless search of his apartment because he did not give valid consent to the search.
At the February 3, 1998 suppression hearing, Sergeant Jones testified that, after Alexander had been advised of and had waived his Miranda rights, he had asked Alexander for consent to search his apartment, had presented him with a "consent to search" form, and had obtained his verbal and written consent to the search. Although the consent form had been misplaced and was not introduced as evidence, Sergeant Jones described the form in detail and testified that it contained the following clause:
 I have given my permission freely receiving no promise from Yellow Springs Police Officers Jones and Nipper or their agents, nor have [I] been coerced in any fashion to give my permission for the above stated search. I give my permission, knowing that any contraband found by Yellow Springs Police Department or officers or agents may be used against me in a Court of law.
Sergeant Jones and Gorrell testified that Alexander had voluntarily signed the form in their presence. John Campbell, a clerk dispatcher at the Yellow Springs Police Department, testified that Sergeant Jones had obtained from him a blank consent form and had brought it back with Alexander's signature on it and that he had placed the form in Alexander's file but did not know of its present whereabouts. Yellow Springs Police Chief, James E. Miller, testified that he had reviewed Alexander's file a few days after the interview and had seen the consent form.
The trial court found that, "although there is no document before [the court] indicating a written signature with regard to the consent to search, the evidence is basically uncon[t]roverted that there was consent and that there was a form executed," and it denied Alexander's motion. Based on the testimony of Sergeant Jones, Gorrell, Campbell, and Chief Miller, the trial court reasonably found that Alexander did in fact give his verbal and written consent to search his apartment.
A warrantless search does not violate the Fourth Amendment if based on the voluntary consent of someone who may validly give consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 222. "[T]he question whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. at 227. In this case, the circumstances surrounding Alexander's consent indicate that he was not subjected to duress or coercion. The mere fact that Alexander did not know about the indictment at the time of consenting to the search of his apartment did not render his consent involuntary. See Charria, 919 F.2d at 848 (rejecting the argument that a suspect's lack of knowledge of an indictment rendered his consent to search involuntary). The record supports the trial court's conclusion that Alexander acted voluntarily in giving his consent to search his apartment.
The second assignment of error is overruled.
 III. THE COURT ABUSED ITS DISCRETION IN VIOLATION OF APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION IN FAILING TO HOLD A FULL HEARING AND IN FAILING TO ORDER AN EVALUATION WITH RESPECT TO APPELLANT'S COMPETENCY TO STAND TRIAL.
Among many pre-trial motions, Alexander filed a motion for a determination of his competence to stand trial. After addressing the issue at the January 6, 1998 hearing, the trial court denied Alexander's motion. Alexander contends that the trial court abused its discretion in refusing to conduct a "full-blown competency hearing" and to order an evaluation of his competence.
At the January 6, 1998 hearing, the trial court stated the following:
 [T]he court is interested in its determination as to whether or not to proceed with what I'll consider a full blown competency hearing, meaning I'll refer the Defendant for evaluation. And upon what basis the Court should do that, the Court would in determining whether or not to hold such a competency hearing and make such referral, would, of course, be looking at whatever evidence any party may have as to any objective indicators of incompetency, which would point towards, for example the Defendant's irrationality, his inability or that he was incapable of understanding the names or objective of proceedings that are against him, that he's incapable of assisting in his defense. As you're all aware, the burden of that is upon the movant to prove by a preponderance of the evidence that the Defendant is incompetent to stand trial.
 The court will, at this, time entertain any evidence and/or arguments with regard to that issue and then make a determination as to whether or not I'll go further with regard to the competency.
Alexander's defense counsel then informed the trial court that he could not "divulge or provide to the Court any statements of [his] client" and stated that, based on his observations and discussions with Alexander, he was concerned that Alexander did not understand the charges and could not assist in his defense. The trial court asked for "any kind of general type of observations that [he had] made" respecting Alexander's competence, and defense counsel replied that he believed Alexander "has somewhat of an understanding of how the process works" and that he could not reveal any more specific information without violating the attorney-client privilege. The trial court found that Alexander had not presented sufficient evidence to warrant a competency examination and denied the motion.
Subjecting a mentally incompetent defendant to trial violates fundamental principles of due process. Pate v. Robinson (1966),383 U.S. 375, 378 In Ohio, the issue of a defendant's competence is governed by R.C. 2945.37, 2945.371, and 2945.38. If the issue of the defendant's competence is raised before the commencement of trial, the trial court must conduct a hearing at which the defense and the state may submit evidence. R.C. 2945.37(B) and (E). Whether to order an evaluation of the defendant's competence is within the trial court's discretion. R.C. 2945.371(A). R.C.2945.37(G) provides:
 A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.
See, also, Dusky v. United States (1960), 362 U.S. 402, 402.
In this case, the trial court scheduled a hearing on Alexander's motion for a determination of his competence and offered him an opportunity to submit evidence on the issue. Because his defense counsel claimed that disclosing such information would violate the attorney-client privilege, the only evidence supporting Alexander's alleged incompetence was his defense counsel's general assertions that he may not have been able to understand the nature of the proceedings and may not have been able to assist with his defense. Although we respect defense counsel's fidelity to any privileged communication, with so little offered in support of the motion, we cannot find fault with the trial court's determination that Alexander failed to overcome the presumption of competence or find that the trial abused its discretion in not ordering a competency evaluation.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
Robert K. Hendrix
Alan Gabel
Hon. Thomas M. Rose